IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KEILA THOMAS,

                    Plaintiff,

        vs.

CHILDREN'S HOSPITAL OMAHA,
CATHERINE SHAFFER, LORI BONWELL,
and ALEXIS AKIN-OTIKO, in their individual
and official capacities,

                    Defendants.

**NO. 8:23-CV-177**


**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

Plaintiff Keila Thomas has sued her former employer, defendant Children's Hospital Omaha, as well as several persons in their official and individual capacities, for "wrongful termination due to violation of rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et. seq.) for sex/pregnancy discrimination." The Court previously granted Thomas's Motion for Leave to Amend. Filing 13. Presently before the Court is Defendants' Motion to Dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Filing 15. For the reasons stated here, the Court grants in part and denies in part Defendants' Motion to Dismiss.

## I.   INTRODUCTION

### A.   Factual Background

The Court considers the following nonconclusory allegations as true for the purposes of ruling on this motion. See *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). After her original Complaint was dismissed, Thomas included more detailed factual allegations in her Amended Complaint, as well as dozens of pages worth of appended material. See generally Filing 14. Although Thomas does not provide an index for this lengthy material appended to her Amended Complaint, the Court notes that this material ranges from EEOC and Nebraska Department of Labor determination letters, to personal doctors' reports, to scientific material regarding pharmaceuticals. *See generally* Filing 14. The Court will only address this appended material insofar as it is incorporated or referenced by the Complaint. *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) ("Though matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." (quotations omitted)). In other words, especially because Thomas did not file a brief opposing the Motion to Dismiss, the Court will not scour the appended material to determine whether Thomas has stated a claim, if Thomas does not herself refer the Court to that material. See *Mients v. United States*, 50 Fed. Cl. 665, 671 (2001) ("The court's duty to scour the complaint for 'any possible basis on which the non-movant might prevail' does not mean that the court must adjudicate every possible cause of action that Thomas might have pleaded." (citing *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988))). Because Thomas's specific factual allegations in the Amended Complaint are not very long or numerous, the Court will reproduce them here.

2

Thomas was employed by defendant Children's Hospital until her termination on June 9, 2022. Filing 14 at 2. She alleges that she experienced sex/pregnancy discrimination and retaliation. as follows:

> After informing the Defendants of my intent to actively conceive and requesting reasonable accommodations to protect my possible unborn fetus from exposure to teratogenic and chemo toxic medications, the named Defendants proceeded to harass and discriminate against me while further continuing to deny my request for reasonable accommodations. On June 6th, 2022 I reported being harassed and discriminated against which was ultimately ignored by the Defendants. I was wrongfully terminated on June 9th, 2022 at 2:10 pm by the Defendants after notifying them of my intent to actively try to conceive and for requesting reasonable accommodations to avoid occupational handling of hazardous drugs in order to protect my reproductive health. I was approximately 4 weeks pregnant when I was terminated from Children's Hospital.

Filing 14 at 2.

> Specifically, regarding her discrimination claim, Thomas alleges the following:

> On June 9th, 2022 at approximately 2:10 pm, the Defendants, Catherine Shaffer, Lori Bonwell and Alexis Akin-Otiko terminated my employment immediately during a meeting which lasted approximately 5 minutes. Catherine Shaffer stated that I "[ . . . ] seemed to be upset with how the organization is being run[ . . . ], disagree with their policies,[ . . . ] therefore terminating [my] employment effective immediately." At no point during the meeting did the Defendants mention "significant misconduct" or any other reason for termination as claimed during unemployment hearing on August 10, 2022 at 8:15 am. Lori Bonwell was not willing to further discuss the email I sent to her on June 6th, 2022. No termination paperwork was provided. When I inquired about the hazardous chemicals document the Defendants claimed I signed, my request was denied by Lori Bonwell. Lori Bonwell abruptly ended the termination meeting by asking me to turn in my badge and proceeded to have security escort me off the premises.

Filing 14 at 4–5.

> Regarding her harassment claim, Thomas alleges,

> The Defendants, Catherine Shaffer and Alexis Akin-Otiko held multiple meetings with me using intimidation to coerce me into working with hazardous chemicals. In audio recordings, Catherine Shaffer stated that since I refused to work with hazardous chemicals then she would have to inform Defendant Lori Bonwell that I am refusing to perform my job duties. Catherine Shaffer was threatening to

3

jeopardize my job by reporting me to Lori Bonwell, the Pharmacy Department Human Resources Representative, for refusing to work with hazardous chemicals based on my pregnancy related concerns.

Defendant, Catherine Shaffer, held a meeting with me to inform me that after speaking with Defendant, Lori Bonwell, to address my request for reasonable accommodations, the decision was made to deny my request. In audio recording, Catherine Shaffer, stated that my "circumstances" of actively trying to conceive and protect my reproductive health did not fall under the criteria to receive reasonable accommodations.

Defendant, Catherine Shaffer held a meeting with me claiming that I signed a document stating that I agreed to occupational exposure to hazardous chemicals regardless of actively trying to conceive. When I requested a copy of that documentation, she refused to provide me with it.

Filing 14 at 6–7.

Finally, regarding her retaliation claim, Thomas alleges,

On June 6th, 2022 at 4:12 pm, I sent Defendant, Lori Bonwell, an email notifying her of the harassment and discrimination I had been experiencing. Lori Bonwell never replied to my email nor did she address it at any point after it was sent. The next time I had any contact with Lori Bonwell was on June 9th, 2022 when she was present during my employment termination meeting in which she also refused to address my concerns outlined in that email sent.

. . .

After being terminated from the Children's Hospital, I filed for unemployment which was denied. Nebraska Department of Labor notified me that Children's Hospital reported they denied me of unemployment benefits due to misconduct. The Judge from the unemployment hearing later reversed the denial and granted me my unemployment benefits stating Children's Hospital "[ . . . ]failed to prove misconduct and [ . . . ]had no grounds for termination.

Filing 14 at 7–8. Thomas avers that "[s]tress due to [her] wrongful termination resulted in a high-risk pregnancy and complicated delivery for [her] and [her] child," which in turn caused further complications and expenses. Filing 14 at 8.

### B.  Procedural Background

Thomas filed her original Complaint with the Court on May 5, 2023. Filing 1. Thomas's original Complaint alleged a "violation of civil rights in the workplace based on sex (pregnancy) [and] wrongful termination." Filing 1 at 3. In the Relief section of her Complaint, Thomas asked for "$188,308.00 total plus punitive damages." Filing 1 at 4. On August 25, 2023, Defendants filed a motion to dismiss, contending that "Plaintiff has not pleaded, and cannot plausibly plead, facts to show that any of the Defendants were state actors, as required for the Complaint's one claim under 42 U.S.C. § 1983." Filing 4.

On September 29, 2023, Thomas filed a Motion to Amend. Filing 11. In her Motion to Amend, Thomas proposed to amend her Complaint by establishing the Court's jurisdiction under 28 U.S.C. § 1332[1] and by alleging a cause of action under Title VII, 42 U.S.C. §§ 2000e, *et. seq.*, for sex discrimination and pregnancy discrimination due to her termination from Children's Hospital Omaha. On October 26, 2023, the Court granted Thomas's Motion to Amend and denied Defendants' Motion to Dismiss without prejudice to reassertion against an amended complaint. Filing 13.

On November 9, 2023, Thomas filed an Amended Complaint, asserting four causes of action: "Wrongful Termination for sex discrimination (pregnancy related discrimination)"; "Harassment and sex discrimination (pregnancy related)"; "Reporting Harassment and Discrimination to Defendant, Lori Bonwell"; and "Retaliation Subsequent to Wrongful Termination (Denial of Unemployment Benefits)." Filing 14 at 4–8. Defendants moved to dismiss the Amended Complaint on November 22, 2023. Filing 15.

---

[1] The Court notes that jurisdiction is proper under 28 U.S.C. § 1331 (federal question), not § 1332 (diversity).

## II. ANALYSIS

### A. Motion to Dismiss Standards

*1. Generally*

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not

parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. See, e.g., *Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible.

### 2.  For Pro Se Litigants

Pleading standards are more liberal for pro se plaintiffs. The Eighth Circuit has explained, "A pro se complaint must be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and 'pro se litigants are held to a lesser pleading standard than other parties[,]' *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir.2004). In addition, "it is the facts alleged in a complaint, and not the legal theories, that state a claim," and "federal courts must examine a complaint to determine if the allegations set forth a claim for relief." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (citations omitted). Accordingly, courts must "decide whether [the pro se plaintiff] has pleaded sufficient facts in h[er] amended complaint to state a claim under any legal theory. If [s]he has, h[er] amended complaint should not [be] dismissed." *Id.*

## B.  Preliminary Matters

The Court begins with two preliminary matters. First, Thomas's "Claim No. 3" is for "Reporting Harassment and Discrimination to Defendant, Lori Bonwell." Filing 14 at 8. Thomas explained that she sent defendant Bonwell an email regarding alleged harassment and discrimination and did not receive a response. Plainly, not responding to a report of discrimination does not itself constitute a cognizable cause of action. Filing 14 at 8. Rather, the Court will construe this alleged lack of response as potential evidence for Thomas's discrimination claim or as potential protected conduct for Thomas's retaliation claim. Thus, this claim is dismissed. Second, Defendants argue that "Shaffer, Bonwell, and Akin-Otiko have no "official capacities" and "the 'official capacity' claims should be dismissed." *See* Filing 16 at 3–5 (capitalization omitted)). Defendants explain that Thomas "has not pleaded that any of the Defendants are state actors."

Filing 16 at 3. The Court agrees that Thomas's failure to allege that the individual defendants are "officials" is fatal to the "official capacity" claims, even under liberal pleadings standards.

### C.  Discussion

*1.  Sex/Pregnancy Discrimination*

Defendants argue that Thomas failed to state a plausible claim for relief because she was "by her own admission[,] not meeting Children's Hospital's legitimate expectations." Filing 16 at 6. Defendants further argue that in the Amended Complaint, "[n]o reference is made to any possible comparators; no discriminatory statements are attributed to her female supervisors." Filing 16 at 7. Defendants also contend, "Merely informing Children's Hospital that she intended to get pregnant did not entitle her to an accommodation relieving her of that job function, and asserting that same bare allegation now does nothing to give rise to an inference of discrimination." Filing 16 at 7. As discussed above, Thomas did not file a brief opposing Defendants' Motion to Dismiss.

Title VII states, "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). Thomas does not allege anything that could constitute a disparate-impact claim, so the Court will determine whether she has stated a disparate-treatment claim. The Supreme Court explained that "disparate treatment . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or other protected characteristic." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (cleaned up). Disparate-treatment claims require "evidence of the employer's subjective intent to discriminate" and "depend on whether the protected trait . . .

9

actually motivated the employer's decision." *Id.* at 52–53 (cleaned up). The Eighth Circuit has elaborated: "In a disparate treatment case, the plaintiff must basically prove that [s]he is a member of a protected class and that the defendant treated h[er] less favorably than similarly situated non-minority employees in circumstances from which intentional discrimination can be inferred." *Hervey v. City of Little Rock*, 787 F.2d 1223, 1231 (8th Cir. 1986).

The prima facie case for disparate treatment based on sex requires showing that the plaintiff "(1) was a member of a protected class; (2) was qualified for [her] job; (3) suffered an adverse employment action; and (4) these are facts that give rise to an inference of unlawful gender discrimination." *DePriest v. Milligan*, 823 F.3d 1179, 1186 (8th Cir. 2016) (cleaned up). Pregnancy discrimination is similar. "The [Pregnancy Discrimination Act] 'does not create substantive rights to preferential treatment.'" *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 879 (8th Cir. 2010) (citation omitted) "On the contrary, the PDA allows 'employers [to] treat pregnant women as badly as they treat similarly affected but nonpregnant employees.'" *Id.* (quoting *Deneen v. Nw. Airlines, Inc.*, 132 F.3d 431, 436–437 (8th Cir. 1998), in turn quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir.1994) (Posner, J.)). The Eighth Circuit has explained that while "[t]he prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint," the "elements of the prima facie case are . . . part of the background against which a plausibility determination should be made" on a motion to dismiss. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (internal citation and quotations omitted).

Thomas makes no suggestion that she was terminated because she is a woman beyond her coloring of the claim as one for sex/pregnancy discrimination. Thus, her claim is for pregnancy discrimination. Notably, Thomas does not allege that Defendants started requiring her to handle

specific toxic medications after Defendants were informed of her intent to conceive; rather, she alleges that Defendants "den[ied] [her] request for reasonable accommodations." Filing 14 at 2. In other words, Thomas alleges that she was required to continue handling toxic drugs as required by her job as a pharmacist even after she notified her employer that she was attempting to conceive. *See* Filing 14 at 2. In effect, Thomas alleges that she was denied preferential treatment. "The PDA does not create substantive rights to preferential treatment." *Elam*, 601 F.3d at 879 (citation omitted). In addition, because Thomas did not identify any comparators—namely, similarly situated nonpregnant employees—who were treated better than she was, Thomas cannot show a PDA violation because the statute "allows employers to treat pregnant women as [allegedly] badly as they treat similarly affected but nonpregnant employees." *Id.* (cleaned up). Thus, even under the "liberal" pleading standards for pro se litigants, *Estelle*, 429 U.S. at 106, Thomas has failed to state a plausible claim of sex or pregnancy discrimination. The Court need not reach Defendants' other arguments for dismissal of this claim.

### 2. *Harassment Because of Sex/Pregnancy*

The "facts underlying [Thomas's] claim" for harassment include her supervisors having "held multiple meetings . . . using intimidation to coerce [Thomas] into working with hazardous chemicals" and "threatening to jeopardize [her] job by reporting [her] to . . . the Pharmacy Department Human Resources Representative for refusing to work with hazardous chemicals based on [her] pregnancy related concerns." Defendants argue that Thomas failed to allege anything that "could plausibly be considered misconduct of any kind, let alone severe or pervasive harassment." Filing 16 at 8. The Court agrees with Defendants.

"To establish a prima facie case for hostile work environment, a plaintiff must show: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a causal nexus

11

exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021) (citation and quotations omitted). "At the pleading phase, the court must determine whether the alleged harassment is 'severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered.'" *Id.* (quoting *Blomker*, 831 F.3d at 1056). The Eighth Circuit explained the "high threshold for a . . . harassment claim based on hostile work environment, as follows:

> To determine whether a complaint alleges an objectively hostile work environment, the court looks at the "totality of the circumstances." The court may consider circumstances such as the "frequency and severity of the discriminatory conduct," whether the conduct was "physically threatening or humiliating, as opposed to a mere offensive utterance," and whether the "conduct unreasonably interfered with the employee's work performance." A hostile work environment claim must allege more "than a few isolated incidents." The alleged harassment "must be so intimidating, offensive, or hostile that it poisoned the work environment."
>
> The Supreme Court has "cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." The "standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." Courts must "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Even "vile or inappropriate" behavior may be insufficient to rise to the level of an actionable hostile work environment claim.

*Warmington*, 998 F.3d at 799.

Here, Thomas alleged that supervisors "us[ed] intimidation to coerce" Thomas into continuing to handle toxic chemicals in her role as a pharmacist. Filing 14 at 6. It appears that the form of this intimidation included informing Human Resources that Thomas "refused to work with hazardous chemicals" and was "refusing to perform [her] job duties," which "jeopardize[d]

12

[Thomas's] job." Filing 14 at 6. Applying the above considerations, the Court concludes that Thomas has not alleged facts sufficient to "create an objectively hostile or abusive work environment [where] the victim must subjectively believe her working conditions have been altered." *Warmington*, 998 F.3d at 799. Regarding the "frequency . . . of the discriminatory conduct," Thomas alleged that there were only three meetings concerning her refusal to work with hazardous chemicals spread out over a two-week period. Filing 14 at 6; *cf. Warmington*, 998 F.3d at 799 ("A hostile work environment claim must allege more 'than a few isolated incidents.'" (internal citation omitted)). Regarding the "severity of the discriminatory conduct," Thomas only alleged that her supervisor threatened to report her to HR for "refusing to perform [her] duties." Filing 14 at 6. A conversation of this kind in a private meeting cannot be understood to constitute "physically threatening or humiliating" conduct. *Warmington*, 998 F.3d at 799. Considering the "totality of the circumstances," the Court concludes that Thomas cannot meet the "demanding" "standards for a hostile environment" because she has not alleged any conduct that is sufficiently "extreme." *Id.* Again, even under the "liberal" pleading standards for pro se litigants, *Estelle*, 429 U.S. at 106, Thomas has failed to state a plausible claim of harassment.

### 3. *Retaliation Because of Sex/Pregnancy*

Thomas's "facts underlying [the] claim" of retaliation include notifying a superior of "the harassment and discrimination [Thomas] had been experiencing" without receiving any response and being denied for unemployment benefits due to Defendants' notifying the Nebraska Department of Labor (DOL) that Thomas engaged in "misconduct." Filing 14 at 8. Thomas notes that the DOL's decision was later reversed, and she received unemployment benefits. Filing 14 at 8. Defendants argue that Thomas "does not allege that she engaged in protected activity or that Children's Hospital took any materially adverse action against her." Filing 16 at 9. Defendants

13

contend, "Applying for unemployment benefits, however, is not protected activity under Title VII." Filing 16 at 10 (citing *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011); *Small v. WW Lodging, Inc.*, 106 F. App'x 505, 508 (7th Cir. 2004); *Riggs v. Bennett Cnty. Hosp. & Nursing Home*, 2019 WL 1441205, at *15 (D.S.D. Mar. 31, 2019)). Defendants further argue that "the mere opposition to a former employee's ultimately successful application for unemployment benefits, as a matter of law, is not a materially adverse action." Filing 16 at 10 (citations omitted).

Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation [under Title VII], an employee-plaintiff must show that (1) she engaged in protected conduct, (2) she suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct." *Schottel v. Nebraska State Coll. Sys.*, 42 F.4th 976, 983 (8th Cir. 2022) (internal quotations and citation omitted). "A plaintiff need not establish that the conduct he opposed was in fact prohibited under Title VII; rather, he need only demonstrate that he had a 'good faith, reasonable belief that the underlying challenged conduct violated Title VII.'" *Warren v. Kemp*, 79 F.4th 967, 974 (8th Cir. 2023).

The Court concludes that Thomas's alleged temporary denial of unemployment benefits does not constitute "a materially adverse employment act," even if Defendants lobbied for the denial. *Id.* The DOL, not the employer, is ultimately the entity that took this action. *See* Filing 14 at 8 ("The Judge from the unemployment hearing later reversed the denial and granted me my unemployment benefits stating Children's Hospital 'failed to prove misconduct and had no grounds for termination.'" (alterations omitted)). Thomas does not direct the Court to any

countervailing authority suggesting that a labor board's disposition on unemployment benefits constitutes an "employment act."

However, even though Thomas does not make this argument explicitly, the Court can discern a potential argument that she engaged in what she in "good faith, reasonabl[y] belie[ved]" was protected conduct when she reported as discrimination the Hospital's refusal to accommodate her desire to conceive by requiring her to continue handling toxic materials.[2] *See* Filing 14 at 2. "Under Title VII, 'protected activity' includes opposition to discriminatory employment practices prohibited under Title VII." *Warren*, WL 5356630, at *4. There is no doubt that Thomas reported as discriminatory the Hospital's demands that she continue handling toxic drugs. As discussed in the above section regarding discrimination, these demands by the Hospital were not in fact discriminatory. However, Thomas may be able to "demonstrate that [s]he had a 'good faith, reasonable belief that the underlying challenged conduct [by the Hospital, which she reported,] violated Title VII.'" *Id.* (internal quotations and citations[ omitted). If so, her complaints may constitute protected conduct. Thomas may also be able to demonstrate that her termination— undoubtedly an adverse employment action—was "causally linked to the protected conduct." *Schottel*, 42 F.4th at 983. In other words, the Court can construe the facts in the Complaint to make out a plausible claim that Thomas suffered unlawful retaliation under Title VII when she was fired after reporting what she believed to be unlawful discrimination. Therefore, because the Court has determined that Thomas "has pleaded sufficient facts in h[er] amended complaint to state a claim

---

[2] Undoubtedly, this argument would have been waived, were Thomas not a pro se litigant. *See Estelle*, 429 U.S. at 107 (explaining that pro se litigants are afforded "liberal[ ] constru[ction]" of their claims).

under any legal theory . . . h[er] amended complaint should not [be] dismissed." *Topchian*, 760 F.3d at 849.

### III. CONCLUSION

For these reasons, the Court concludes that plaintiff Thomas has failed to state a claim upon which relief can be granted with respect to her discrimination and harassment claims. These claims are dismissed. However, Thomas has plausibly alleged unlawful retaliation in violation of Title VII. In addition, the "official capacity" claims are dismissed. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss, Filing 15, is granted in part and denied in part, as set out above.

Dated this 2nd day of February, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge

16