IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KEILA THOMAS,

    Plaintiff,

vs.

CHILDREN'S HOSPITAL OMAHA,

    Defendant.

8:23CV177

MEMORANDUM AND ORDER

    This matter is before the court on Defendant's motion for summary judgment. (Filing No. 50.) For the reasons explained below, Defendant's motion for summary judgment will be granted.

## BACKGROUND

    Plaintiff, Keila Thomas (Thomas), filed her original complaint pro se on May 5, 2023. (Filing No. 1.) After Defendant, Children's Hospital Omaha (Children's), filed a motion to dismiss, Thomas filed a motion to amend, and the Court denied Children's motion to dismiss and granted Thomas' motion to amend. (Filing No. 4; Filing No. 11; Filing No. 13.) After Thomas filed her amended complaint, Children's filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and the Court granted in part and denied in part Children's' motion to dismiss, which resulted in one surviving claim under Title VII for retaliation. (Filing No. 14; Filing No. 15; Filing No. 19.) The Court concluded Thomas had alleged facts liberally construed "to make out a plausible claim that Thomas suffered unlawful retaliation under Title VII when she was fired after reporting what she believed to be unlawful discrimination." (Filing No. 19 at 15.)

    Following Children's' answer and affirmative defenses the parties began discovery, and Children's filed its motion for summary judgment. (Filing No. 20; Filing No. 50.) Children's argues it is entitled to summary judgment because:

1

> On this record, no reasonable jury could find Thomas had a good faith, objectively reasonable belief that Children's Hospital had engaged in any employment practices constituting an actionable Title VII violation. Further, Thomas cannot produce any evidence to demonstrate Children's Hospital's legitimate nondiscriminatory reasons for terminating her employment – absenteeism and refusal to perform her job – were pretext for retaliation.

([Filing No. 51 at 1-2](#).)

## STATEMENT OF FACTS

Thomas was employed by Children's as a pharmacy technician From February 14, 2022, to June 9, 2022. ([Filing No. 52 at 1](#).) Prior to her start date at Children's, Thomas acknowledged receipt of a copy of the job description and indicated she understood all the job duties and responsibilities to perform the essential functions of the job as outlined in Children's "Pharmacy Technician Job Description". ([Filing No. 52 at 2](#).)

"The Pharmacy Technician Job Description includes a section titled 'ESSENTIAL FUNCTIONS/COMPETENCIES,' which notes that '20%' of a Pharmacy Technician's time is dedicated to 'Compound[ing] topical, oral, intravenous' (a.k.a., 'IV') 'admixtures and antineoplastic drug therapies following established pharmaceutical production standards of practice as developed by the department and consistent with national standards in a consistent, accurate and timely manner.'" ([Filing No. 52 at 2](#).) Children's "Pharmacy Technician Job Description includes a section titled 'PHYSICAL REQUIREMENTS/WORKING CONDITIONS,' which notes that '11% to 49%' of a Pharmacy Technician's 'Work Environment' will include 'Toxic or caustic chemicals.'" ([Filing No. 52 at 3](#).)

Thomas understood everything in the job description and did not have any questions about it when she read it. ([Filing No. 52 at 3](#).) Thomas confirmed she could "'perform the essential functions of' her Pharmacy Technician position 'WITHOUT reasonable accommodations.'" ([Filing No. 52 at 3](#).) No one from Children's ever told Thomas "that compounding hazardous medications was not a required part of the pharmacy technician job." ([Filing No. 52 at 3](#).)

Under Children's attendance policy, employees were assessed one point for unscheduled absences and a half point for being late to or leaving work early. ([Filing No. 52 at 4](#).) After

2

accumulating six points, a Corrective Action is issued by a documented discussion. (Filing No. 52 at 4.) After accumulating eight points, a Corrective Action is issued by a written warning. (Filing No. 52 at 4.) After nine points, a Corrective Action in the form of a final written warning is issued, and after an employee accumulates ten points, the employee is terminated. (Filing No. 52 at 4.) An employee within the first six months of employment "'may be terminated at any time for excessive absenteeism.'" (Filing No. 52 at 4.)

On April 6, 2022, Thomas' supervisor, Alexis Akin-Otiko (Akin-Otiko), presented Thomas with, and Thomas signed, an attendance corrective form. (Filing No. 52 at 4.) Between April 10, 2022, and April 23, 2022, Thomas arrived late to work ten times, and she left work early nine times. (Filing No. 52 at 5.) On April 25, 2022, Akin-Otiko emailed Thomas that she noticed a pattern of tardiness. (Filing No. 52 at 5.) Akin-Otiko presented and Thomas signed a "'Written Warning'" on May 6, 2022, because Thomas had accumulated at least eight attendance points. (Filing No. 52 at 5.)

On May 18, 2022, Akin-Otiko sent an email to Thomas informing her that due to her absences in April and May, Thomas did not have enough paid time off (PTO) accrued for Akin-Otiko to approve the future days Thomas had requested off. (Filing No. 52 at 5.) On May 23, 2022, Akin-Otiko sent an email to Thomas to offer her an opportunity to submit a late PTO request based on their previous discussion on the matter. (Filing No. 52 at 5.) On May 27, 2022, Akin-Otiko presented and Thomas signed a "'Final Written Warning' because Thomas had accumulated at least 9 attendance points". (Filing No. 52 at 6.)

On May 31, 2022, Lori Bonwell (Bonwell), Children's Human Resources Business Partner, sent an email to Thomas indicating Thomas had not followed through with Akin-Otiko's offer to submit the PTO request late. (Filing No. 73-5.) Thomas replied complaining she felt she was being harassed and retaliated against by Akin-Otiko and Cathi Shaffer (Shaffer), Akin-Otiko's supervisor, because they discussed "pharmacy department gossip" about her at the May 27, 2022, corrective meeting. (Filing No. 73-5.)

Thomas arrived to work late on June 1, 2022. (Filing No. 52 at 6.) On June 2, 2022, Thomas met with Akin-Otiko, and Thomas informed Akin-Otiko that she was actively trying to conceive, and therefore, she was not going to compound hazardous medications, including chemotherapy medications, antineoplastic medications, cytotoxic medications, and teratogenic medications as

3

part of her aseptic training. (Filing No. 52 at 6.) Akin-Otiko explained that compounding IV hazardous medications was part of the pharmacy technician training process, and she informed Thomas of the protections in place to protect Children's employees from direct exposure to hazardous medications. (Filing No. 52 at 6.)

Later, on June 2, 2022, Thomas met with Akin-Otiko and Shaffer and repeated she would not compound hazardous medications. (Filing No. 52 at 7.) Thomas also requested an accommodation to relieve her of the duty to compound hazardous medications. (Filing No. 52 at 7.) Shaffer explained to Thomas that compounding hazardous medications was part of the pharmacy technician position at Children's, but she would ask Bonwell about Thomas's request to be excused from those duties based on her attempts to conceive a child. (Filing No. 52 at 7.) On June 3, 2022, Shaffer sent an email to Bonwell informing her of Thomas's refusal to compound IV hazardous medications and Thomas's request for accommodation. (Filing No. 52 at 7.)

On June 6, 2022, Bonwell replied to Shaffer that Thomas's request for accommodation was not a reasonable request that Children's would approve. (Filing No. 52 at 7.) Children's has never granted a pharmacy technician an accommodation that excused him/her from the job function of compounding hazardous medications. (Filing No. 52 at 7.) Shaffer and Akin-Otiko met with Thomas on June 6, 2022, and they informed her Children's would not approve her request for accommodation because it did not constitute a reasonable accommodation. (Filing No. 52 at 8.) Shaffer also reiterated that compounding hazardous medications was an essential function of her job as a pharmacy technician. (Filing No. 52 at 8.) Thomas responded that she still would not compound hazardous medications due to the health risk. (Filing No. 52 at 8.)

Thomas sent Bonwell an email at 4:12 p.m. on June 6, 2022, in which she described the earlier meeting with Shaffer and Akin-Otiko, as well as previous meetings that were also attended by Bonwell. (Filing No. 52 at 9.) The email's subject stated "Retaliation", and it concluded with:

> I am being retaliated against, harassed and getting called into the office to speak with Alexis or Cathi almost everyday for the past week. I am being bombarded with corrective actions, verbal warnings and counseling. I am experiencing some new form of harassment and retaliation every time I come into work.

(Filing No. 52 at 9.)

4

The "retaliation" Thomas referenced in her June 6, 2022, email concerned Shaffer's repeating that the pharmacy technician job required Thomas to compound hazardous materials and Shaffer's failure to accommodate Thomas's request to be excused from the compounding requirements. (Filing No. 52 at 9.) Thomas believed she was being harassed in response to her informing Children's of her attempt to become pregnant. (Filing No. 52 at 10.)

When Bonwell received Thomas's June 6, 2022, email, Bonwell was already aware of the issues Thomas mentioned. (Filing No. 52 at 11.) Bonwell knew that Thomas had met with Akin-Otiko and Shaffer multiple times during which Thomas requested and was denied an accommodation from compounding chemotherapy medications. (Filing No. 52 at 11.) Bonwell was also aware of three corrective actions against Thomas for her violations of the attendance policy. (Filing No. 52 at 11.)

After Shaffer and Akin-Otiko met with Thomas on June 6, 2022, they made the decision to terminate Thomas's employment based on her repeated and ongoing violations of the attendance policy, and Thomas's repeated refusal to perform the essential function of compounding medications, including hazardous medications. (Filing No. 52 at 11.) On June 9, 2022, Thomas met with Bonwell, Shaffer, and Akin-Otiko. (Filing No. 52 at 11.) They informed her again that compounding chemotherapy medications was an expectation of the position of pharmacy technician as outlined in the job description. (Filing No. 52 at 11.) Thomas understood that Children's expectations for the pharmacy technician's job required her to compound hazardous medications. (Filing No. 52 at 11.) Thomas understood that her employment was terminated on June 9, 2022, because she disagreed with the pharmacy technician job requirement to compound hazardous medications. (Filing No. 52 at 11.)

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.

5

2011) (quotation omitted). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.*

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* "In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit." *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quotation omitted). "The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmovant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (quotation omitted).

**Evidentiary Objections**

Children's objects to Thomas's Statement of Additional Material Facts (Filing No. 59.) and her Response to Defendant's Separate Statement of Material Facts (Filing No. 62.), asserting Thomas's response to Children's statement of material facts is improper and fails to comply with NECivR. 56.1(b), and her Statement of Additional Material Facts contains assertions not material to specific facts at issue in Children's motion for summary judgment. (Filing No. 89 at 2-3; Filing No. 90 at 1.) Children's argues the noncompliance by Thomas requires the Court to deem its statement of facts admitted. (Filing No. 89 at 3.) Because consideration of the objectionable statements does not alter the Court's conclusions, Children's objection will be denied as moot.

**Retaliation Claims under Title VII**

Title VII's antiretaliation provision forbids employer actions that " 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C.

6

§ 2000e-3(a)). Where, as in this case, there is no direct evidence of retaliation, the court applies the burden-shifting framework set out in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of retaliation, which requires the plaintiff to demonstrate (1) [she] engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) the engagement in the protected activity was the but-for cause of the adverse employment action. *Warren v. Kemp,* 79 F.4th 967, 973 (8th Cir. 2023). If the plaintiff can make a prima facie showing of retaliation, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for its actions. *Hutton*, 812 F.3d at 683. If the defendant does so, the burden shifts back to the plaintiff to prove the proffered reason is a pretext for retaliation. *Id.*

With regard to the first element of a prima facie retaliation case, the plaintiff must "demonstrate … a 'good faith, reasonable belief that the underlying challenged conduct violated Title VII,' " *Warren,* 79 F.4th at 974 (quoting *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007)). Furthermore, the plaintiff must show that those who took action against him/her "knew that he had engaged in statutorily protected activity," *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998).

Thomas contends she has presented sufficient evidence that she had a good faith reasonable belief she experienced retaliation in violation Title VII. (Filing No. 77.) In addition to her June 6, 2022, email to Bonwell, Thomas suggests that her communication, (Filing No. 75-7.), of her concerns of harassment and retaliation to EEOC investigator Steve Damrow supports her claim of a good faith reasonable belief she experienced retaliation in violation of Title VII. (Filing No. 77 at 13.)

On May 31, 2022, Thomas contacted Damrow to complain she was experiencing harassment and retaliation at her job with Children's. (Filing No. 75-7.) Thomas believed the harassment and retaliation she was experiencing at Children's were connected to the charge she had filed against her previous employer. (Filing No. 75-7.)

For purposes of this Memorandum and Order the Court assumes that Plaintiff can establish a prima facie case of retaliation because, for the reasons set out below, her claim fails at a subsequent step of the *McDonnell Douglas* framework. See *Banford v. Bd. Of Regents of Univ. of Minnesota,* 43 F.4th 896, 900 (8th Cir. 2022) ("Even assuming that [the employee] could establish

7

a prima facie case of discrimination, she has not met her burden of showing that [the employer's] legitimate, nondiscriminatory justification for nonrenewal is pretextual").

To survive summary judgment, Thomas must produce sufficient evidence to establish Children's true reason for terminating her employment was in retaliation for her engaging in Title VII protected activity. See *Gibson v. Geithner,* 776 F.3d 536, 540 (8th Cir. 2015). "There are at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Id.* (citing *Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 854 (8th Cir.2012)).

Children's reasons for terminating Thomas's employment are her attendance violations and her refusal to perform the essential job function of compounding chemotherapy medications. (Filing No. 53-14; Filing No. 73-2.) Thomas asserts she has presented sufficient evidence to establish Children's explanation for her termination from employment was pretext for retaliation. (Filing No. 77 at 16-17.) According to Thomas, pretext is established because Children's basis for her termination has changed over time, and by the temporal proximity of her termination date to her June 6, 2022, email reporting alleged harassment. (Filing No. 77 at 16-17.)

Thomas contends Bonwell's and Shaffer's deposition testimony establish conflicting reasons for terminating her employment. (Filing No. 77 at 16.) On June 9, 2022, Thomas understood that her employment was terminated because she disagreed with the pharmacy technician job requirement to compound hazardous medications; however, Children's Involuntary Termination Form states the reason for Thomas's termination was violation of attendance policy and refusal to perform essential job functions. (Filing No. 77 at 16.) Thomas contends no one at the meeting ever mentioned attendance, misconduct or insubordination as reasons for her termination, and Children's did not assert misconduct or insubordination until Thomas applied for unemployment benefits. (Filing No. 77 at 16-17.)

"A plaintiff claiming shifting explanations to support pretext must show that the reasons are completely different, not minor discrepancies." *Sieden v. Chipolte Mexican Grill, Inc.,* 846 F.3d 1013, 1018 (8th Cir. 2017). Furthermore, the "change in explanation must be substantial." *Gardner v. Wal-Mart Stores, Inc.,* 2 F.4th 745, 750 (8th Cir. 2021).

8

The evidence Thomas cites in support of her argument does not establish a substantial change in Children's explanation for terminating her employment. (Filing No. 73-2.) Indeed, it supports Children's termination reasons remain unchanged. During her introductory employment period, Thomas persisted in her refusal to perform the essential function of her job, compounding chemotherapy medication, and she repeatedly failed to comply with Children's attendance policy. Because these were and always have been the grounds for terminating Thomas's employment, the bare assertions suggested by Thomas fail to demonstrate pretext.

Temporal proximity alone is insufficient to establish pretext. *Gibson,* 776 F.3d at 541. Because Thomas presents no other evidence which tends to support a finding of pretext, the close timeframe between her June 6, 2022, email to Bonwell and her termination is insufficient to show pretext.

Thomas cannot show Children's non-retaliatory rationale for her termination from employment—attendance and insubordination—was pretext for retaliation for her June 6, 2022, email to Bonwell. Consequently, her remaining Title VII claim will be dismissed.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Filing No. 50.) is granted.
2. Judgment will be entered by separate document.

Dated this 28th day of July, 2025.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge

9